**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LARRY DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-CV-65-TCK-FHM |
| | ) |
| CONLEY CORPORATION, a | ) |
| Domestic For Profit Business | ) |
| Corporation, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Claim for Relief (Doc. 12) pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

**I.     Factual Background**

In March 2015, Plaintiff Larry Davis, who is African-American, was hired by Defendant Conley Corporation as a supervisor of quality control in the piping department. Plaintiff was hired as a supervisor despite lacking experience in the industry or as a manager. Defendant told Plaintiff that he would be trained to be a "great supervisor." (Compl. ¶ 11, Doc. 2-2.) Shortly after being hired, Plaintiff was instructed to "discipline and ultimately fire" another African-American employee. (*Id.* ¶ 12.) Plaintiff alleges that he was hired into the supervisor position "in order for the Defendant to have an African American supervisor to terminate their African American employee." (*Id.*) Approximately two months after being hired, Plaintiff was instructed to work on the plant floor to help perform the task of winding pipe, despite having no experience performing that task. Plaintiff alleges he was given no further training or support as a supervisor.

After being assigned to work on the plant floor, Plaintiff suffered a "severe chemical rash," allegedly due to resin chemicals he was exposed to while winding pipe. (*Id.* ¶ 14.) When Plaintiff

reported his injury, he was given Benadryl but was not sent for medical treatment. A month later, Plaintiff's injury had worsened. Plaintiff asked to go to the doctor and was sent to an urgent care facility. The physician who treated him "could not believe that Defendant had waited so long to allow him to go to the doctor." (*Id.* ¶ 15.) Plaintiff was put on restrictions not to work with resin until his injury healed. Defendant allegedly "refused to accommodate the restriction and terminated the Plaintiff's employment on June 15, 2015." (*Id.* ¶ 16.)

Plaintiff alleges that during the course of his employment with Defendant, he was subjected to disparate treatment and a racially hostile work environment and that he was terminated on the basis of race. Plaintiff alleges that he heard the word "n*gger" used on several occasions; he heard employees telling racist jokes; and other supervisors harassed him on the basis of his race and made other racially offensive comments. One supervisor "joked with [Plaintiff] by stating he could not go into a certain break room or was not given certain supplies because he was black," and the same supervisor also called Plaintiff a "do gooder [sic] negro." (*Id.* ¶ 13.)

Plaintiff filed suit in Tulsa County District Court alleging (1) deprivation of rights protected by 42 U.S.C. § 1981 and (2) intentional infliction of emotional distress ("IIED"). Defendant removed the case to this Court and now moves for dismissal of Plaintiff's claim for IIED.

**II.     Motion to Dismiss**

    **A.     Rule 12(b)(6) Standard**

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility" to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

**B. Analysis**

Oklahoma recognizes IIED as an independent tort. *Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986). "An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress." *Miller v. Miller*, 956 P.2d 887, 900 (Okla. 1998). In order to state a claim for IIED, a plaintiff must allege facts showing: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the

plaintiff's emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law).

Defendant challenges Plaintiff's IIED claim based on the second and fourth elements. Oklahoma law directs the district court to act as a "gatekeeper" and make an initial determination about the outrageousness of the defendant's conduct, as well as whether severe emotional distress can be found, before sending the claim to a jury. *Trentadue v. United States*, 397 F.3d 840, 856 n.7 (10th Cir. 2005). To satisfy the "extreme and outrageous" element, a plaintiff must prove the defendant's conduct was so extreme and outrageous as to be beyond all possible bounds of decency. *Eddy*, 715 P.2d at 77 ("Conduct which, though unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can be regarded as utterly intolerable in a civilized community, falls short of having actionable quality.") (quotations omitted). Oklahoma courts adhere to the narrow standards set forth in Comment d to § 46 of the Restatement (Second) of Torts:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Breeden v. League Servs. Corp.*, 575 P. 2d 1374, 1376 (Okla. 1978) (citing Restatement (Second) of Torts § 46, cmt. d)). With respect to the fourth element of an IIED claim, a plaintiff must establish "distress which is so severe that no reasonable man could be expected to endure it." *Trentadue*, 397 F.3d at 856.

4

First, Plaintiff contends the alleged racially discriminatory work environment satisfies the "extreme and outrageous" conduct element. Plaintiff alleges he was subjected to racially derogatory comments, racially disparate treatment, and wrongful termination based on his race. Specifically, the Complaint alleges: (1) Plaintiff heard the word "n*gger" in the workplace "on a number of occasions"; (2) racist language and jokes were permitted, including jokes and offensive comments by employees and a manager that targeted Plaintiff; and (3) Plaintiff was not allowed to use the same break room as other, non-African-American employees, which other employees told him was due to his race. (Compl. ¶ 13, Doc. 2-2.) In the context of IIED, "[w]orkplace discrimination or harassment rarely rises to the level of extreme and outrageous conduct." *Barham v. K Mart Corp.*, No. 10-CV-0401-CVE-PJC, 2010 WL 3650684, at *6 (N.D. Okla. Sept. 14, 2010); *Bingaman v. Spirit Aerosystems, Inc.*, No. 14-CV-677-GKF-PJC (N.D. Okla. Feb. 4, 2015) (citing same); *Johnson v. ORS Pasco*, No. 13-CV-777-JED-PJC (N.D. Okla. Sept. 30, 2014) (citing *Gabler v. Holder & Smith, Inc.*, 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct)). The Complaint alleges conduct that, while offensive and inappropriate, falls short of the "extreme and outrageous" conduct required to state a claim for IIED. *See Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 687 (10th Cir. 2007) (multiple instances of racial harassment, including manager's racially derogatory remarks directed toward plaintiff, manager's refusal to shake plaintiff's hand and directing plaintiff to call on particular customers because the customer was Mexican or liked Mexicans, sending the plaintiff 'Mexican peanut brittle,' directing plaintiff to not 'Mexicanize' his truck, and frequent references to the plaintiff as 'the Mexican' or 'the f* * *ing Mexican' did not establish claim for IIED) (applying Wyoming law based on Restatement (Second) of Torts § 46); *Johnson v. ORS Pasco*, No. 13-CV-777-JED-PJC

(N.D. Okla. Sept. 30, 2014) (disparate treatment and insulting and racially charged language directed toward plaintiff not sufficiently "extreme and outrageous"); *Rentie v. Enterprise Mfg. LLC*, 2010 WL 2231922, at *11 (N.D. Okla. 2010) (evidence that African-American plaintiff repeatedly heard or saw the word "n* * *er" not sufficient to withstand summary judgment on IIED claim). Plaintiff has not cited any case in which an Oklahoma appellate court has found conduct similar to that alleged here to be extreme and outrageous.

Second, Plaintiff alleges that he was hired under false premises to shield Defendant from liability for discharging another African-American employee (Compl. ¶ 12, Doc. 2-2), and that Defendant reneged on its promise to train Plaintiff to be a "great supervisor" (*id.* ¶ 11). Plaintiff argues that Defendant's failure to train and support Plaintiff in a supervisory role was extreme and outrageous. As noted above, workplace discrimination and harassment normally do not constitute extreme and outrageous conduct sufficient to state a claim for IIED under Oklahoma law, even if based on improper motive. *See Doyle v. Nordam Group, Inc.*, 2010 WL 5141274 (N.D. Okla. Dec. 13, 2010) (dismissing claim for IIED where plaintiff alleged he was denied promotion due to age discrimination). Plaintiff's allegations related to his hiring and lack of training fall well short of the narrow "extreme and outrageous" standard.

Finally, Plaintiff suggests Defendant's alleged indifference to Plaintiff's chemical rash was extreme and outrageous. A defendant's indifference to a physical injury does not necessarily constitute extreme and outrageous conduct, even when an employer fails to accommodate an employee's disability. *See Brown v. CRTS, Inc.*, No. 13-CV-728-JED-FHM (N.D. Okla. Sept. 30, 2014) (dismissing IIED claim where plaintiff alleged, *inter alia*, co-worker harassed and shouted at her, exacerbating a medical condition and requiring emergency medical treatment, but employer

6

failed to respond to plaintiff's complaints or accommodate her disability and terminated plaintiff for excessive absenteeism despite presentation of a doctor's note); *Wheeler v. Spirit Aerosystems, Inc.*, No. 13-CV-421-CVE-TLW (N.D. Okla. Oct. 1, 2013) (dismissing IIED claim where, after plaintiff had surgery for carpal tunnel syndrome she developed due to her work, plaintiff was continually assigned to more physically challenging jobs than another co-worker who had had surgery). Plaintiff has not alleged facts establishing that Defendant acted "beyond all possible bounds of decency" with respect to Plaintiff's injury. *Eddy*, 715 P.2d at 77.

Even assuming the alleged conduct met the "extreme and outrageous" standard, Plaintiff's IIED claim fails because the Complaint includes only a general, conclusory allegation of emotional distress. Plaintiff argues that he suffered emotionally due to Defendant's failure to have him treated for the rash caused by exposure to the resin while winding pipe. However, the Complaint "does not set forth any facts regarding [Plaintiff's] mental or emotional state, much less distress which is so severe that no reasonable man could be expected to endure it." *Robbins Motorsports, L.L.C. v. Nat'l Fire & Marine Ins. Co.*, 2011 WL 2174911, at *3 (N.D. Okla. June 3, 2011) (quoting *Cohlmia v. Ardent Health Servs., L.L.C.*, 448 F. Supp. 2d 1253, 1272 (N.D. Okla. 2006)). The Court finds that Plaintiff's IIED claim fails independently on the fourth element.

### III. Conclusion

Plaintiff's Complaint fails to state a plausible claim for IIED. Accordingly, Defendant's Motion to Dismiss (Doc. 12) is GRANTED.

**SO ORDERED this 6th day of June, 2017.**

*[signature]*

**TERENCE KERN**
**United States District Judge**